STATE of Minnesota, Respondent,

v.

Roger William BISHOP, Appellant.

No. C3-95-2359.

Court of Appeals of Minnesota.

April 9, 1996.

Hubert H. Humphrey, III, Attorney General, William F. Klumpp, Jr., Assistant Attorney General, St. Paul, Raymond F. Schmitz, Olmsted County Attorney, Rochester, for Respondent.

Duane A. Kennedy, Rochester, for Appellant.

Considered and decided by LANSING, P.J., and RANDALL and MULALLY *, JJ.

## OPINION

EDWARD D. MULALLY, Judge.

Appellant Roger William Bishop pleaded guilty to gross misdemeanor driving after cancellation (DAC) and to aggravated driving while intoxicated (DWI). *See* Minn.Stat. §§ 171.24(c)(1), 169.129 (Supp.1993). He was sentenced on the gross misdemeanor DAC charge and thereafter moved to dismiss the aggravated DWI charge, claiming that sentencing on the aggravated DWI would constitute multiple punishment in violation of Minn.Stat. § 609.035 (Supp.1993). The trial court denied Bishop's motion and sentenced him on the aggravated DWI charge. Bishop appeals. Because we agree with the trial court that the DAC and DWI offenses did not arise out of the same behavioral incident, we affirm.

## FACTS

On March 14, 1994, at 8:15 p.m., Bishop was stopped while driving his motorcycle by Rochester Police Officer Donald Timmerman. The stop occurred at Sixteenth Avenue and Second Street Southwest. He ran a license check on Bishop and found that Bishop's driver's license had been cancelled. Officer

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

Timmerman also ran a registration check on the motorcycle and found Bishop did not have any motorcycle insurance. Officer Timmerman cited Bishop, released him, and warned him not to drive.

Almost three hours later at 10:55 p.m., Officer Timmerman again saw Bishop driving his motorcycle and stopped him near the intersection of Fourth Street Southeast and Broadway. Officer Timmerman detected a strong odor of alcohol and eventually arrested Bishop. Bishop consented to a breath test that resulted in a reading of .12.

Two complaints were filed in connection with the incidents. The first, file # K6–94–701, charged Bishop with gross misdemeanor DAC and no insurance. Minn.Stat. §§ 171.24(c)(1) (Supp.1993); 169.797, subd. 2 (1992). The second complaint, file # K8–94–702, charged Bishop with aggravated DWI, gross misdemeanor DWI, gross misdemeanor driving after cancellation, and no insurance. Minn.Stat. §§ 169.129 (Supp.1993); 169.121, subds. 1(a)(d)(e), 3(c)(1) (1992 & Supp.1993); 171.24(c)(1) (Supp.1993); 169.797, subd. 2 (1992).

A hearing was held on September 26, 1994. Bishop signed a written petition to plead guilty, in which he admitted the following facts:

a) On the date in question, namely March 14th, 1994, and at approximately 8:15 o'clock P.M. * * *, I drove a motor vehicle in the County of Olmsted, * * * in the City of Rochester.

b) Location of my driving conduct * * * was: 16th Ave. & 2nd St. SW.

c) Shortly before that driving conduct I had consumed alcohol;

d) As a result of consuming alcohol:

    *      *      *      *      *      *

    — my alcohol concentration was .12 * * *.

Bishop's petition further stated:

I will plead guilty to Aggravated D.U.I. in file No. K8–94–702. The companion ⌐

pointment pursuant to Minn. Const. art. VI, § 10.

charges will be dismissed. I will plead guilty to D.A.C. in file No. K6–94–701. The No Insurance charge will be dismissed.

The petition was submitted to the court. The court proceeded to question Bishop about his plea, the petition, and its contents. Bishop acknowledged that he had been stopped for DAC three hours before he was stopped for DWI. The court accepted Bishop's plea.

Bishop was sentenced on the gross misdemeanor DAC charge on August 18, 1995. On October 6, 1995, Bishop moved to dismiss the remaining aggravated DWI charge, claiming that it arose out of the same behavioral incident as the offense for which he had already been sentenced and was therefore barred by Minn.Stat. § 609.035. The court denied Bishop's motion to dismiss and sentenced him on the aggravated DWI charge. This appeal followed.

## ISSUE

Did the trial court violate Minn.Stat. § 609.035 (Supp.1993) when it sentenced Bishop for aggravated DWI?

## ANALYSIS

■ Bishop argues that because he has already been sentenced on the gross misdemeanor DAC charge, he cannot be punished for aggravated DWI. He insists that both offenses arose out of the same behavioral incident and that separate sentences violate the statutory prohibition against multiple punishment:

[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

Minn.Stat. § 609.035 (Supp.1993); [1] *see also State v. Bookwalter,* 541 N.W.2d 290 (Minn. 1995) (statute contains two types of protection for criminal defendants, one against serialized prosecution and other against multiple punishment).

■ In a traffic case like this one, the test to be applied in determining whether offenses arose out of the same behavioral incident is whether those offenses arose "out of a continuous and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *City of Moorhead v. Miller,* 295 N.W.2d 548, 549 (Minn.1980) (quoting *State v. Johnson,* 273 Minn. 394, 405, 141 N.W.2d 517, 525 (1966)). This test is not mechanical and involves examination of all the facts and circumstances by the trial court. *State v. Banks,* 331 N.W.2d 491, 493 (Minn.1983).

■ Bishop argues that the court accepted and was bound by his written guilty plea petition, which did not clearly separate the factual bases for the two offenses. Written petitions like the one involved here are authorized by Minn. R.Crim. P. 15.01, which requires that a trial court question a defendant on a number of issues before accepting a guilty plea. Those issues are intended to insure that the plea is voluntary and intelligent, and that there is a factual basis for the plea. *See State v. Milton,* 295 N.W.2d 94, 95 (Minn.1980).

■ These written petitions are not intended to provide the sole factual basis for a guilty plea. That basis may be ascertained from the record, which may include defendant's testimony from the guilty plea hearing or other proceedings before the trial court, testimony of other witnesses, or statements summarizing the evidence. *State v. Trott,* 338 N.W.2d 248, 251 (Minn.1983). Similarly, in determining whether the offenses in this case arose out of the same behavioral incident, the trial court was not restricted to Bishop's recitation of the facts in his Rule 15

---

1. In 1994, the legislature substantially changed the language of Minn.Stat. § 609.035. *See* 1994 Minn. Laws ch. 615, § 23. Under the current version of the statute, it appears that a defendant may be given consecutive sentences for certain multiple offenses even if those offenses arise out of the same conduct or behavioral incident. The current version of the statute, however, does not appear to prohibit multiple convictions or sentences for offenses that arise out of different behavioral incidents.

petition. Rather, the court properly reviewed the entire record, including the Rule 15 petition and the transcript of the plea hearing, to determine whether Bishop's two offenses were separate and distinct.

That record established that the two offenses occurred at different times and places. Bishop's driving conduct was first interrupted when Officer Timmerman stopped Bishop, checked the status of his license and motorcycle insurance, cited him, and told him not to drive any more. Three hours later, Bishop's driving conduct was again interrupted when Officer Timmerman observed Bishop driving at a different location and stopped him. Given these undisputed facts, it is clear the two offenses for which Bishop was eventually sentenced did not arise out of a continuous and uninterrupted course of conduct. *See State v. Wurst,* 350 N.W.2d 482, 483 (Minn.App.1984) (driving conduct separated by approximately one hour not part of same behavioral incident); *cf. Johnson,* 273 Minn. at 405, 141 N.W.2d at 525 (violations part of same behavioral incident when they took place within period of few minutes and distance of two blocks).

The record further established that Bishop's errors of judgment were distinct and not of a similar nature. When Bishop decided to drive at approximately 8:15 p.m., his decision and error of judgment involved only the operation of his motorcycle knowing that his Minnesota driver's license had been cancelled. When he decided to drive at 11:00 p.m., however, he made the decision to drive while intoxicated. Because Bishop's errors of judgment were not coincident, two offenses were involved. *See State v. Anderson,* 468 N.W.2d 345, 346 (Minn.App.1991) (separate behavioral incidents involved when defendant's decision to drive preceded officers' attempts to stop vehicle and preceded defendant's attempts to evade officers' apprehension).

## DECISION

The trial court properly determined that Bishop's two offenses did not arise out of the same behavioral incident, and properly sentenced him on both.

**Affirmed.**